# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS

```
* * * * * * * * * * * * * * * * * * * *
MONG HA VIVIAN CHEUNG,          *
                                *       No. 19-342V
              Petitioner,       *       Special Master Christian J. Moran
                                *
v.                              *
                                *       Filed: May 21, 2024
SECRETARY OF HEALTH             *
AND HUMAN SERVICES,             *
                                *
              Respondent.       *
* * * * * * * * * * * * * * * * * * * *
```

Michael Firestone, Marvin Firestone and Associates, San Mateo, CA, for petitioner;
Michael J. Lang, United States Dep't of Justice, Washington, DC, for respondent.

## DAMAGES DECISION AWARDING COMEPNSATION[1]

Mong Ha Vivian Cheung previously established that a tetanus-diphtheria-acellular pertussis ("Tdap") vaccine harmed her shoulder, causing her to suffer a shoulder injury induced by vaccine administration ("SIRVA"). The parties disputed the amount of compensation to which she is entitled. She is awarded **$93,710.66**.

---

[1] The E-Government Act, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services), requires that the Court post this decision on its website (http://www.cofc.uscourts.gov/aggregator/sources/7). This posting will make the decision available to anyone with the internet. Pursuant to Vaccine Rule 18(b), the parties have 14 days to file a motion proposing redaction of medical information or other information described in 42 U.S.C. § 300aa-12(d)(4). Any redactions ordered by the special master will appear in the document posted on the website.

## I.   Events in Ms. Cheung's Life

### A.   Pre-Vaccination History

Ms. Cheung was born in 1958 in Hong Kong.  Exhibit 1 at 1.  Information about when she came to the United States is conflicting as a record created in 2017 states that she immigrated to the United States 20 years earlier whereas a record created in 2019 states that she moved to United States in 2015.  Exhibit 22 at 222, 439.

In 2012, Ms. Cheung underwent an MRI because of right neck pain.  The MRI detected a bulging disc at C5-6.  Exhibit 22 at 511.

### B.   Vaccination and Next Two Months

Ms. Cheung received the Tdap vaccine on March 7, 2016.  She complained about neck pain during this appointment and was referred to physical therapy for neck pain.  Exhibit 2 at 148-51.

The following day after her vaccination, Ms. Cheung complained about arm pain through a telephone call to her doctor's office.  Exhibit 2 at 147.  Over the next few weeks, Ms. Cheung complained of pain at the injection site and her doctor assessed her with "[a]cute pain of right shoulder, likely [side effect] of Tdap."  Exhibit 2 at 24.  She reported the pain made it difficult for her to drive and get dressed.  Id. at 139.  The pain even woke up her from her sleep at night.  Id.

Ms. Cheung reported that her neck problem had resolved during a physical therapy session on April 4, 2016.  Exhibit 21 at 4.  However, due to pain in her right shoulder, she continued to seek care.

Ms. Cheung started acupuncture at a facility in the United States, named Alex Lau Acupuncture & Herbs, on April 11, 2016.  She had eight sessions of acupuncture from April 11, 2016 to May 24, 2016.  Although these acupuncture records have been reviewed, they provide no details about the extent of injury or the treatment Ms. Cheung received.  See Exhibit 6, passim.

Concurrently with the acupuncture, Ms. Cheung received physical therapy.  Exhibit 2 at 128-30.  While she was receiving physical therapy, Ms. Cheung underwent an MRI of her right shoulder.  Her rotator cuff was intact.  Exhibit 2 at 40 (MRI, performed on Apr. 19, 2016); see also id. at 121.  The MRI also detected inflammation in the bursa.  Id. at 40.  In a follow-up, Ms. Cheung informed the doctor that her pain was improving on its own.  Id. at 121.  In a May 19, 2016

2

session with a physical therapist, Ms. Cheung stated that she had retained a lawyer and planned to sue a pharmaceutical company.  Id. at 19.

The acupuncture and physical therapy in the United States ended during May 2016.

### C.    Summer 2016 in Hong Kong

On May 30, 2016, Ms. Cheung had an acupuncture session at Feng Jiu in Hong Kong.  Exhibit 9 at 1.  The set of records from Feng Jiu are in Chinese.  See Exhibit 9.

While in Hong Kong, Ms. Cheung also sought treatment from another facility, known as "acupuncture in Hong Kong."  The records from this institution are written mostly in Chinese, although there is a handwritten notation saying in English "right shoulder pain."  See Exhibit 8, passim.  These sessions ran from June 10, 2016 through August 1, 2016.

A third institution from which Ms. Cheung received care was Canossa Hospital.  At Canossa Hospital, Ms. Cheung underwent physiotherapy.  When she started physiotherapy on May 8, 2016, she was documented to have a full range of motion in her right shoulder.  Exhibit 5 at 1.  The last of seven physiotherapy sessions at Canossa Hospital occurred on August 11, 2016.

### D.    Remainder of 2016 in the United States

By August 17, 2016, Ms. Cheung had returned to United States and attended a session of physical therapy.  Exhibit 11 at 3-4.  She told the physical therapist that her condition was only slightly affecting the quality of her life.  Id.

Ms. Cheung sought care from North East Medical Services on August 31, 2016 because of diabetes and she reported pain in her neck and lower back.  The shoulder pain was described as "residual."  Exhibit 2 at 101.  During this appointment, the doctor said that Ms. Cheung was not following the dietary plan for diabetes but was interested in diabetes education.  Id. at 103.  She also declined any treatment for tuberculosis.  Ms. Cheung sought a referral for physical therapy.

In the next physical therapy session, Ms. Cheung reported that she had no pain with activities of daily life.  Exhibit 11 at 24 (Sep. 6, 2016).  Ms. Cheung then attended a few more sessions of physical therapy.

This course of physical therapy ended on September 21, 2016.  The physical therapist's record states that Ms. Cheung was discharged due to poor compliance.

Exhibit 11 at 39.  However, in the litigation, Ms. Cheung challenged this characterization, noting that she had attended five of six physical therapy sessions. Pet'r's Reply, filed Nov. 6, 2023, at 11.

In the next month, Ms. Cheung had two more acupuncture sessions at Alex Lau.  Exhibit 6 at 1.  Again, the acupuncture records provide almost no information about the nature of Ms. Cheung's injury.

On November 9, 2016, Ms. Cheung sought assistance from a physical therapist for pain in her cervical spine and right shoulder.  The physical therapist noted that Ms. Cheung is a "poor historian regarding pain."  Exhibit 11 at 92-95. However, the basis for the physical therapist's opinion about the accuracy of Ms. Cheung's reporting is not clear.  In any event, the physical therapist stated that Ms. Cheung's problems were having a moderate impairment to the quality of her life.

### E.    Early 2017 in Hong Kong

At the end of 2016, Ms. Cheung was in Hong Kong.  She had one acupuncture visit at Feng Jiu Chinese Medical Clinic on December 29, 2016.  She also had two visits at Feng Jiu in the first week of January 2017.  Exhibit 10 at 3.

### F.    January 2017 through November 2017 in the United States / Chinese Hospital

On January 27, 2017, Ms. Cheung saw a physical therapist and reported that she had no pain in her right shoulder.  Exhibit 11 at 158.  The pain, instead, was in her right shoulder and cervical spine and Ms. Cheung rated the pain as a 5-6 out of 10.[2]  Id.  Overall, her improvement in symptoms was 80%.

By February 15, 2017, Ms. Cheung had completed 10 sessions of physical therapy.  The physical therapist expected that she would continue to improve with a home exercise program.  Exhibit 11 at 183.

Ms. Cheung established care with providers at the Chinese Hospital Gellert Health Services on March 3, 2017.  Exhibit 22 at 495.  According to its website, the Chinese Hospital is "a community-owned, not-for-profit organization, [that] exists primarily to deliver quality health care in a cost effective way, responsive to

---

[2] The medical records contain a history of no pain in her right shoulder and a history of pain in her right shoulder.

the community's ethnic and cultural uniqueness."[3]  After Ms. Cheung started to see medical providers at the Chinese Hospital, the medical records are more extensive. See Exhibit 22, passim.

In the March 3, 2017 initial appointment at Chinese Hospital, Ms. Cheung reported chronic lower back pain and neck pain.  Exhibit 22 at 495.  She was referred to a physical therapist for chronic neck pain.  Id. at 484.

Between March 17, 2017 and May 30, 2017, Ms. Cheung had eight sessions of physical therapy.  The reason for the physical therapy was cervical pain. Exhibit 13, see also Exhibit 22 at 346.  In this context, Ms. Cheung stated that she could not recall a date of injury for her problem in her cervical spine.  Exhibit 22 at 184.

Apparently as part of Ms. Cheung's introduction to the Chinese Hospital, she had an appointment for preventative medicine on July 7, 2017.  Although this medical record discusses some problems, such as diabetes, chronic shoulder pain is not listed.  Exhibit 22 at 452-453.

Medical personnel at the Chinese Hospital frequently monitored Ms. Cheung's diabetes.  See, e.g., Exhibit 22 at 421.  The reports about diabetes do not say anything about Ms. Cheung's right shoulder, although these appointments may not have been intended to document any shoulder problems.

In fall 2017, the medical records about shoulder problems are not entirely consistent.  In a September 15, 2017 session of physical therapy, Ms. Cheung was noted to have a normal range of motion in her right shoulder.  Exhibit 11 at 189-91, see also Exhibit 22 at 188.  The purpose of this physical therapy was for Ms. Cheung's cervical spine.  On the other hand, a doctor in the Chinese Hospital stated that Ms. Cheung had bilateral shoulder pain on October 2, 2017.  Exhibit 22 at 416-17.  The plan was to continue physical therapy and acupuncture.  The physical therapy course ended on November 6, 2017.  Exhibit 11 at 243.

An acupuncture session occurred at Zhao's in Hong Kong on October 10, 2017.  Exhibit 7 at 2.  Ms. Cheung had nine more visits at this facility through February 7, 2018.  Id.

The visits at Zhao's Acupuncture were not continuous in that Ms. Cheung also received more treatment at the Chinese Hospital.  She reported neck pain on

---

[3] This exhibit will be marked as Court Exhibit 1001.

October 27, 2017.  Exhibit 22 at 411.  On November 7, 2017, Ms. Cheung again reported neck pain and stated that she was feeling better after acupuncture.  Id. at 406.

### G.     Early 2018 in Hong Kong

From December 28, 2017 through April 10, 2018, Ms. Cheung had multiple acupuncture visits at both Feng Jiu Acupuncture and Zhao's Acupuncture.  See Exhibit 10 at 4, Exhibit 7 at 1, 3.  These records do not particularly assist in understanding the nature and quality of any pain in Ms. Cheung's right shoulder.

### H.     Care in 2018 in the United States

On May 12, 2018, Ms. Cheung returned to the Chinese Hospital.  She reported pain in her right shoulder and pain in her neck.  Exhibit 22 at 292.  The nurse practitioner noted a diagnosis of bursitis of right shoulder from her 2016 MRI.  For her right shoulder and neck pain, the nurse practitioner advised her to exercise, to attend physical therapy sessions, and to apply ice to the affected areas to cool down sore muscles or numb the pain.  The nurse practitioner also recommended her to take acetaminophen to alleviate her symptoms.

Unexpectedly, Ms. Cheung went back to the Chinese Hospital on May 23, 2018, reporting that she had a motor vehicle accident yesterday.  Exhibit 22 at 289-90.  She reported pain in her neck and wrist.  She was referred for acupuncture.  Records for any acupuncture treatment in the United States are not readily apparent.[4]

Ms. Cheung underwent an annual exam at the Chinese Hospital on September 24, 2018.  Exhibit 22 at 277.  She reported chronic neck and shoulder pain.  The nurse practitioner discussed conservative management, encouraging Ms. Cheung to exercise, to attend physical therapy sessions, and to apply ice to the affected areas to cool down sore muscles or numb the pain. The nurse practitioner recommended follow-up appointments for chronic neck pain and right shoulder pain.

### I.     2019

Except for the periodic appointments for diabetes monitoring, Ms. Cheung sought doctors relatively infrequently in 2019.  From May to August, Ms. Cheung had multiple acupuncture visits in Hong Kong.  Exhibit 14; Cf. Exhibit 1

---

[4] Ms. Cheung received some acupuncture while in Hong Kong.  See Exhibit 7 at 1, 3.

(petitioner's declaration, dated Sep. 25, 2019) ¶ 17 (stating Ms. Cheung was in Hong Kong "between May and mid-August this year (2019)"). She also had acupuncture in the United States. An invoice from Ann-Shine Health Center, dated August 20, 2019, charges Ms. Cheung for 10 visits without providing any details about the nature of the treatment. Exhibit 46 at 4.

Ms. Cheung had an annual exam on October 1, 2019. The fifth item on the list of problems affecting Ms. Cheung was chronic neck and shoulder pain. She was advised to follow up with acupuncture for these problems. Exhibit 22 at 222-24. Whether Ms. Cheung immediately resumed acupuncture is unclear.

### J.     2020

Ms. Cheung presented invoices from appointments with an acupuncturist in the United States, potentially for treatment in 2019 or 2020. See Exhibit 46 at 2 (invoice dated January 7, 2020 for six visits), Id. at 3 (invoice dated April 9, 2020 for six visits). A greater amount of information would have helped Ms. Cheung demonstrate whether she was experiencing right shoulder pain during this time.

It appears that sometime after April 2020, Ms. Cheung left the United States and returned to reside in Hong Kong. See Exhibit 41(describing leaving this country during the pandemic); see also Pet'r's Mot. at 28 (asserting that Ms. Cheung "had not returned to California during the entirety of the Covid-19 pandemic and associated quarantine restrictions"). From August 2020 until November 2020, Ms. Cheung underwent eight sessions of physiotherapy in Hong Kong. Exhibit 58. During this period, an acupuncturist recommended Ms. Cheung continue her acupuncture. Exhibit 33. At the end of the course of physiotherapy, Ms. Cheung was reported to have a full range of motion. Exhibit 34.

On November 23, 2020, Annie Tsang anticipated that Ms. Cheung might require six to eight additional treatment sessions. Exhibit 49 at 1-2. Whether Ms. Cheung immediately obtained more treatment is not readily apparent.

### K.     2021

In 2021, Ms. Cheung was apparently living in Hong Kong. She submitted documents showing that she had nine sessions of acupuncture at Feng Jui between April 7, 2021 and August 3, 2021. Exhibit 36. These acupuncture sessions largely overlapped with seven sessions of physiotherapy from June 10, 2021 to November 16, 2021. Exhibit 43. The parties otherwise did not cite records created by a medical doctor for Ms. Cheung in 2021.

**L.    2022**

Treatment records from 2022 are similarly thin.  While the records show that she attended 12 sessions of physiotherapy for right shoulder pain and upper arm, they do not reveal the extent of the treatment.  See Exhibit 45, Exhibit 51.

**M.    2023**

On January 17, 2023, Ms. Cheung had an acupuncture session at Mui Hei Hung acupuncture in Hong Kong.  Exhibit 42 at 1.  This appears to be the only visit to this facility.

On February 8, 2023, Ms. Cheung began a course of physiotherapy at Tang Shiu Kin Hospital.  She had eight visits, ending on April 17, 2023.  Exhibit 60 at 1-6.  On February 9, 2023, a few more months of treatment were recommended.  Exhibit 44.

By June 2023, Ms. Cheung had returned to the United States, potentially for a visit.  From June 26, 2023 to July 29, 2023, Ms. Cheung had six sessions at Ann-Shine Acupuncture.  Exhibit 57 at 1-6.

Ms. Cheung had a telemedicine appointment with Kelly Qin, FNP, on July 28, 2023.  Exhibit 47, Exhibit 56 at 2.  From the information communicated during this telemedicine appointment, Ms. Qin assessed Ms. Cheung as having right shoulder pain and referred her for another round of physical therapy.  Id.

As part of this litigation, Ms. Cheung estimated that she had recovered to 70-80%.  Exhibit 59 (affidavit dated August 30, 2023).  She stated that a physical therapy told her that she needed to live with the pain.

On September 7, 2023, Ms. Cheung underwent an MRI of her right shoulder.  Exhibit 64.  The MRI revealed a tear in her rotator cuff.  Id.

A doctor whom Ms. Cheung retained for this litigation, Marco Bodor, reviewed the results of the MRI on September 11, 2023.  Exhibit 61 at 2.  Dr. Bodor indicated that Ms. Cheung's QDASH score was 51, meaning she had a moderate disability.

In a letter to Ms. Cheung's attorney, Dr. Bodor recommended a TENEX procedure for Ms. Cheung.  Exhibit 63.

## II.   **Procedural History**

Represented by Attorney Michael Firestone, Ms. Cheung began this case by filing her petition on March 5, 2019.  She alleged that the Tdap vaccine caused her to suffer a SIRVA.  The case was assigned to the Special Processing Unit.  Ms. Cheung periodically filed factual materials.

The parties attempted to resolve the case informally from August 14, 2020 through January 31, 2022.  However, these efforts did not succeed.  The Secretary maintained that Ms. Cheung was not entitled to compensation.  Resp't's Rep., filed March 31, 2022.

To facilitate the process of obtaining useful reports from experts, a set of instructions were proposed on July 6, 2022.  These draft instructions became final after neither party objected to them.  Ms. Cheung supported her claim by filing a report from Dr. Bodor.  Exhibit 37.  Dr. Bodor opined that Ms. Cheung's history of cervical pain was separate from her shoulder pain.  Thus, Dr. Bodor stated that Ms. Cheung fulfilled the regulatory definition of SIRVA.  Id.

The Secretary was given an opportunity to respond to Dr. Bodor's report. However, the Secretary declined to invest further resources.  Resp't's Amended Report, filed March 6, 2023; C.f. Exhibit A at 4 (report of Dr. Bishop: "the records support a finding that petitioner did sustain a SIRVA injury").  Accordingly, Ms. Cheung was found to be entitled to compensation.  Ruling, issued Mar. 30, 2023.

The parties again attempted to resolve the case but remained apart.  As noted below, the primary disputed element of compensation concerns pain and suffering. The parties requested a formal adjudication of this item as well as other aspects of compensation.  Rest's Status Rep., filed June 15, 2023.

The parties developed their positions regarding the appropriate amount of compensation.  Ms. Cheung submitted some documents on August 1, 2023 and her brief on August 31, 2023.  The Secretary advanced his position through a brief filed on October 30, 2023.

Ms. Cheung replied on November 6, 2023.  With her reply, she submitted a letter from Dr. Bodor.  Exhibit 63.  The Secretary expressed concern that Ms. Cheung was submitting new evidence with her reply brief.  To remove any prejudice, the Secretary was given an opportunity to seek a physical examination by a doctor whom the Secretary had retained.  Alternatively, the Secretary could present a report from an expert about the opinions presented by Dr. Bodor.

The Secretary responded to Dr. Bodor's opinions by filing a report from a competing expert, Dr. Bishop. Exhibit A. The Secretary incorporated Dr. Bishop's opinions into his supplemental brief, filed April 8, 2024.

Ms. Cheung had the final word by submitting a second reply brief on May 9, 2024. With the submission of the reply, the question of compensation is ready for adjudication.

## III.   Standards for Adjudication

A petitioner is required to establish her case by a preponderance of the evidence. 42 U.S.C. § 300aa–13(1)(a). The preponderance of the evidence standard requires a "trier of fact to believe that the existence of a fact is more probable than its nonexistence before [he] may find in favor of the party who has the burden to persuade the judge of the fact's existence." Moberly v. Sec'y of Health & Hum. Servs., 592 F.3d 1315, 1322 n.2 (Fed. Cir. 2010) (citations omitted). Proof of medical certainty is not required. Bunting v. Sec'y of Health & Hum. Servs., 931 F.2d 867, 873 (Fed. Cir. 1991).

Distinguishing between "preponderant evidence" and "medical certainty" is important because a special master should not impose an evidentiary burden that is too high. Andreu v. Sec'y of Health & Hum. Servs., 569 F.3d 1367, 1379-80 (Fed. Cir. 2009) (reversing special master's decision that petitioners were not entitled to compensation); see also Lampe v. Sec'y of Health & Hum. Servs., 219 F.3d 1357 (Fed. Cir. 2000); Hodges v. Sec'y of Health & Hum. Servs., 9 F.3d 958, 961 (Fed. Cir. 1993) (disagreeing with dissenting judge's contention that the special master confused preponderance of the evidence with medical certainty).

## IV.   Analysis

Ms. Cheung has broadly claimed compensation for three categories. They are (A) pain, suffering, and emotional distress (past and future), (B) unreimbursed expenses (past and future), and (C) the Medicaid lien.

### A.   Pain, Suffering, and Emotional Distress

The Vaccine Act states that compensation shall include "For actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." 42 U.S.C. § 300aa–15(a)(4). Factors relevant to this element of compensation are "[(1)] the ability to understand the injury, i.e., the injured's mental faculties are intact; [(2)] the degree of severity of the injury; and [(3)] the potential number of years the individual is subjected to the injury."

McAllister v. Sec'y of Health & Human Servs., No. 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), vacated and remanded on other grounds, 70 F.3d 1240 (Fed. Cir. 1995).

1.    Past Pain, Suffering, and Emotional Distress

The parties differ on the reasonable amount of compensation for Ms. Cheung's past pain, suffering, and emotional distress.  Ms. Cheung proposes $150,000.  Pet'r's Mot., filed Aug. 31, 2023, at 18.  The Secretary proposes $90,000.  Resp't's Resp., filed Oct. 30, 2023, at 7.  Each party cites cases that she or he contend supports the outcome.

Ms. Cheung has largely failed to substantiate her proposed amount.  Taken as a whole, the evidence does not support a finding that Ms. Cheung has incurred long-lasting or severe pain, suffering, or emotional distress.

From March 7, 2016 to approximately August 17, 2016, records support a finding that Ms. Cheung was having shoulder problems.  She complained to doctors.  See Exhibit 2 at 24, Exhibit 8, passim, Exhibit 21 at 4.  The doctors reacted to her complaints by, among other things, ordering an MRI, which did not show any structural problems in Ms. Cheung's shoulder.  Exhibit 2 at 120-21.  She went to physical therapy and acupuncture in the United States.  Exhibit 2 at 128-31, Exhibit 6.  In Hong Kong in the summer 2016, she went to acupuncture at two places (Feng Jiu and Acupuncture in Hong Kong).  Exhibits 8-9.  She also went to physiotherapy.  Exhibit 5 at 3.  All this treatment suggests that when Ms. Cheung suffers an injury, she seeks medical assistance.

Ms. Cheung's shoulder problem abated, starting in mid-August 2016.  She told a physical therapist that her problem only slightly affected her quality of life. Exhibit 11 at 4 (Aug. 17, 2016).  A medical provider stated that any shoulder pain was "residual" on August 31, 2016.  Exhibit 2 at 101.  Ms. Cheung stated that she was not having pain with her activities of daily life.  Exhibit 11 at 24 (Sep. 6, 2016).  These records are consistent in showing that around August – September 2016, Ms. Cheung's symptoms largely, if not entirely, improved.  A slightly later record also corroborates Ms. Cheung's improvement.  See Exhibit 11 at 158 (January 27, 2017: no right shoulder pain).

In the first half of 2017, Ms. Cheung sought care primarily for a neck problem.  When she started as a patient at the Chinese Hospital, she reported chronic neck pain.  Exhibit 22 at 495 (Mar. 3, 2017).  She was, accordingly, referred to physical therapy for neck pain.  Id. at 484.  The physical therapy was on her cervical spine.  Exhibit 13.  The lack of complaints about a shoulder problem

tends to show that Ms. Cheung was not having shoulder pain.  C.f. Pet'r's Mot. at 28 (recognizing that Ms. Cheung's neck condition "is not part of her claim").  Thus, any award for past pain, suffering, and emotional distress should be based upon the recognition that Ms. Cheung's SIRVA was resolved about one year after the March 7, 2016 vaccination.

Ms. Cheung argues that her SIRVA has persisted for years and years.  A duration of multiple years has not been established with persuasive evidence.  Although in November 2023 Dr. Bodor stated that Ms. Cheung "has ongoing shoulder pain and disability since a TDAP vaccination provided to her right shoulder on 3/7/16," Exhibit 63 at 1, Dr. Bodor does not possess first-hand knowledge of Ms. Cheung's shoulder condition for the previous seven years.  This lack of knowledge reduces the value of Dr. Bodor as a treating physician.  See Solak v. Sec'y of Health & Hum. Servs., No. 14-869V, 2020 WL 9173158, at *19 (Fed. Cl. Spec. Mstr. Feb. 19, 2020) (special master declined to credit treater's recitation of an allergic reaction that came from petitioner's history); Rothenberg v. Sec'y of Health & Hum. Servs., No. 15-696V, 2018 WL 2731639, at *16 (Fed. Cl. Spec. Mstr. Apr. 19, 2018) (distinguishing what a patient says about a diagnosis from a doctor's determination of diagnosis).  Moreover, Dr. Bodor's first expert report, which recites information about treatment records, does not persuasively opine on the duration of Ms. Cheung's shoulder problem.  See Exhibit 37.

Ms. Cheung may fairly point to some medical records documenting a complaint about shoulder pain.  For example, at the Chinese Hospital on October 2, 2017, Ms. Cheung reported bilateral shoulder pain.  Exhibit 22 at 415-17.  But, the basis for this report is not readily apparent as few, if any, medical records discuss left shoulder pain.

An evaluation of complaints about right shoulder pain occurring after 2018 is confounded by the discovery of a rotator cuff tear during the September 7, 2023 MRI.  Exhibit 64.  The expert retained by the Secretary, Dr. Bishop, persuasively explained that Ms. Cheung "has a clear structural reason for her shoulder pain- her full thickness rotator cuff tear."  Exhibit A at 4.  The rotator cuff tear, itself, was "due to age-related degenerative changes in the shoulder."  Id. at 6.

After the Secretary presented the report from Dr. Bishop, Ms. Cheung argued that the SIRVA-induced shoulder problem could have been a substantial factor in her development of a torn rotator cuff.  Pet'r's Supp'l Reply, filed May 9, 2024, at 2.  However, this argument ignores that Ms. Cheung's first shoulder MRI showed that her rotator cuff was intact.  Exhibit 2 at 121.  Ms. Cheung's argument

also overlooks that she told a doctor that she had no pain in her right shoulder in
January 2017.  Exhibit 11 at 158.

For these reasons, the extent of Ms. Cheung's SIRVA is more limited in
scope than she claims.  A reasonable amount of compensation for her past pain,
suffering, and emotional distress is $90,000.  See L.J. v. Sec'y of Health & Hum.
Servs., No. 17-059V, 2023 WL 2137946, at *6 (Fed. Cl. Spec. Mstr. Feb. 21,
2023).

### 2. Future Pain, Suffering, and Emotional Distress

The parties dispute whether Ms. Cheung is entitled to compensation for
pain, suffering, and emotional distress that Ms. Cheung might incur in the future.
See Pet'r's Mot. at 27; Resp't's Resp. at 14-16.  As explained in the preceding
section, Ms. Cheung has not preponderantly established that her SIRVA continued
past 2017.  While Ms. Cheung might have shoulder pain, the pain she is
experiencing now was not induced by the vaccination.  Thus, she is not entitled to
any compensation for future pain, suffering, and emotional distress.[5]

## B. Unreimbursed Medical Expenses

Ms. Cheung is entitled to compensation for unreimbursed and
unreimbursable expenses.  42 U.S.C. § 300aa–15(a)(1).  She seeks both past and
future expenses.

### 1. Past Unreimbursed Medical Expenses

Ms. Cheung seeks reimbursement for two types of expenses: (1) costs of
acupuncture and/or physiotherapy and (2) mileage expenses for attending
appointments.  Her claim is $12,938.18.  Pet'r's Mot. at 29.  The Secretary rejected
most items and proposed a lump sum of $2,000.00 as a reasonable amount of
compensation for past expenses.  Resp't's Resp. at 17-18.

Ms. Cheung has established that she is entitled to compensation for
acupuncture and physiotherapy through and including January 7, 2017.[6]  She is
similarly entitled to the travel costs associated with those visits.

---

[5] Ms. Cheung did not propose a methodology in which compensation for future pain,
suffering, and emotional distress is discounted to net present value.  In future cases, Mr.
Firestone should show this process.  See 42 U.S.C. § 300aa–15(f)(4).

[6] These are items numbered 1-29 on the spreadsheet.

Although Ms. Cheung argues that she should be compensated for acupuncture treatments for her neck and shoulder, Pet'r's Mot. at 28, this contention is unavailing.  As discussed in section IV.A above, Ms. Cheung's SIRVA ended sometime around March 2017.  She has not demonstrated that acupuncture appointments beyond that date were "from the vaccine-related injury." 42 U.S.C. § 300aa–15(a)(1)(B)(i).  Thus, a reasonable amount of compensation for past unreimbursed expenses is $1,884.37.

### 2.   Future Unreimbursable Expenses

Ms. Cheung has not established with preponderant evidence that any future shoulder problems are due to her SIRVA.  Thus, she is not entitled to compensation for future expenses.

### C.   MediCal Lien

Ms. Cheung seeks reimbursement for the Medicaid lien in the amount of $1,826.29.  Pet'r's Mot. at 31.  The Secretary did not dispute this item.  Resp't's Resp. at 18.  The amount is supported by a March 12, 2020 letter.  Exhibit 23. Although California may have incurred additional expenses (see Pet'r's April 16, 2024 status report), those additional expenses would not be due to Ms. Cheung's SIRVA.

## V.   Conclusion

Earlier in this litigation, Ms. Cheung established that she was entitled to compensation.  The evidence now shows that Ms. Cheung is entitled to compensation in the amount of **$93,710.66** to be issued in the form of a check payable to petitioner.  This amount reflects $90,000 for pain, suffering, and emotional distress; $1,884.37 for past unreimbursed expenses; and $1,826.29 for the Medicaid lien.

For the Medicaid lien, a check payable shall be issued, jointly to petitioner and:

Department of Health Care Services
Recovery Branch – MS 4720
P.O. Box 997421
Sacramento, CA 95899-7421
DHCS Account Number: C97959289F-VAC02

The Clerk's Office is instructed to enter judgment in accord with this decision unless a motion for review is filed.  Information about the submission for a motion for review, including deadlines, is presented in the Vaccine Rules, which are available through the Court's website.

**IT IS SO ORDERED**.

<u>s/Christian J. Moran</u>
Christian J. Moran
Special Master